In this appeal, the District Court erred in admitting Detective Niningale's expert testimony regarding the methamphetamine because the government failed to make critical Rule 16 of the court disclosures prior to trial. Federal Rule of Criminal Procedure 16, of course, states that, quote, the government must give to the defendant a written summary of any expert testimony and must, quote, describe the witness's opinions and the basis and reasons for these opinions. It doesn't say in detail, right? And our Conroy case says it doesn't have to be done in detail. I mean, tell me if I'm mischaracterizing the case. Right? I think... Okay, so... No, I don't think you are. Okay, good. So tell me why that case doesn't control. I think what we have here now, I'm trying to remember the specific facts of Conroy because they're not just coming... No, that's okay. They're not leaping to mind. Yeah. But I think that the problem that we have here is that you have a disclosure. There's no doubt about it. It says that the expert's going to opine on the dollar values of methamphetamine. But that disclosure is tantamount to disclosing nothing about that subject because it begs the question, well, what is he actually going to say? And so we didn't know before trial whether that expert was going to opine that the value of the methamphetamine was $200, $1,000, and $20,000. It's just unclear. Was there any effort to discover what the substance of the testimony would be prior to trial? I think it's a good question, Your Honor. There were multiple efforts, pre-trial filings, hearings, and none of it was successful until minutes before the tech was going to testify. The district court directed the government to disclose that information. What about the hearing? I know that defense counsel questioned the expert during the hearing and certainly could have asked the expert, you know, how much is this valued at? But basically covered everything but the value. I think it's a fair point, Your Honor. The problem is that at a Dobbert hearing, of course, that's a different issue, the reliability requirement. Sure. And I don't think it should put the burden on the defendant to take a deposition one day before trial to learn information that's supposed to be disclosed weeks before trial. And I think that would be the onus that we'd be putting on defense counsel. So that would be my concern. Suppose you're right. I just want to figure out exactly what we're reviewing here. The way I view the case, and you can disagree, is the district court did presume or assume for the sake of argument that there was a violation here. And then said what I'm going to do, the remedy I'm going to order is disclosure and an hour break for lunch so that you can think about the disclosure. And I think your argument then is the district court should have done more and excluded that testimony altogether. So really the question then becomes, and I don't know if this framing is right, did the district court abuse its discretion by not ordering a remedy that was greater than the remedy that was ordered? I think that's precisely right. Okay. And the reason why the remedy was insufficient here is that by the time it's the middle of trial, it's too late to change your theory of defense. It's too late to develop meaningful cross-examination. And then we learn that the value of the methamphetamine is $1,600. And I think the prejudice there, to turn directly to that, is that the theory of defense presented by Mr. Kessler is that he possessed the methamphetamine. He admitted it. He said, I possessed all this methamphetamine because I'm addicted to the drug and I wanted to use it all myself. I didn't want to share. And the government's burden of proof is also important to note here. It was its burden alone to prove that Mr. Kessler intended to distribute that methamphetamine. Did you cross-examine on the question of the value? We did not. And I think, again, the other problem is it's tough to do this on the fly. But you were aware it was going to be potentially at issue. Right. We did. But, again, going back to my hypothetical, I mean, had the expert's testimony been that it was worth $200, it would have changed Mr. Kessler's theory of defense. Because he said what the government argued at closing and why it was prejudicial was that Mr. Kessler couldn't afford these drugs without selling them. And that $1,600 was a far too great of a sum for someone like Mr. Kessler who was unemployed. But our argument was, well, he was an addict and he was going to use all his resources to pay for any amount of drugs just for himself. And I think there is other evidence that supported that notion in that the other tools of trade weren't found on Mr. Kessler. He didn't have a gun. He didn't have a pile of money. He didn't have baggies. He didn't have scales or other things like that that we typically see. Well, as to prejudice, what about the Kenyon case? The Kenyon case? Our circuit 2007 KENYON said did not object when Dr. Kaplan offered testimony, didn't seek a continuance to react to ostensibly, the court says, unexpected evidence, and doesn't show, even if you had earlier notice, it would have been forced, you could force its exclusion or do a more effective defense. So where do you fit on those two prongs? I think you're right. Certainly the motion for continuance, I have to concede that that would have helped us had that motion been filed. But I think the problem is even if you file a motion for continuance, you come back and you're in the same place with your theory of defense. Well, could you have kept the evidence out or presented a more effective defense? If the evidence was kept out? No. I think what the court is trying to say, if you had earlier evidence, then could you have kept it out or presented a more effective defense? So where do you file on those two? I think those two are the preconditions for prejudice. Yes. And I think so. I mean, had we known in a timely fashion, we could have hired our own expert to say, hey, it's not $1,600, it's $800 or whatever we could get an expert to clearly say. I don't want to say that it's $800, I don't know what the figure is. But that would support our defense, I think, immensely. Any amount less than $1,600 is going to have a substantial likelihood of a different outcome because the government lied on that $1,600 figure so heavily. Would you still be stuck with the great quantity, though, and the fact that the officer said, you know, this is a dealer-level amount of drugs? Yes, Your Honor. That we would be stuck with that. And I think the government points to that fact. That alone established that he was distributing methamphetamine at trial. Again, I go back, though, to the fact that he didn't have the other hallmarks of drug dealing, the tools of the trade, and things of that sort. Unless there's other questions, I'd like to reserve the remainder of my time for rebuttal. All right. Thank you, Mr. Colbert. Ms. Morgan? May it please the Court, my name is Emily Morgan. I represent the United States, and I did so throughout the pendency of this case. Our position is that the district court did not abuse its discretion by allowing this testimony, and in reviewing for today's oral argument, I realized we should have framed this issue a bit clearer, going back through the transcript. This particular district court allows juror question, and that's how this issue came to light. A juror posed a question of Officer Wright that was not allowed to be asked, but asked what was the street value for 57 grams of methamphetamine? And at that point, I recognized the jury wanted to hear about the dollar figure. If you go through the transcript, you'll realize that in the pre-trial hearing that wasn't termed a dollar hearing, but happened the first morning of trial, I never asked about the street value of methamphetamine. That wasn't our game plan. That wasn't our course. And it wasn't in any of the grand jury transcripts, either. I had focused on the weight specifically, and that this weight was a distribution weight and not a user weight. It was not until that juror question came out that it became apparent that we needed to answer that question for them. And that's when appellant's counsel made the objection before lunch, knowing that that witness was going to testify, and he raised that issue regarding the dollar figure. And I believe it's page 242 of the transcript where the juror actually asked that question. Isn't the real issue, though, I mean, we presume, I mean, the real issue, and this sort of helps the government make its case on appeal, I think, the real issue is whether the district court did enough, not whether the district court did nothing at all. Because the district court did provide a remedy, and our case law suggests that the remedy of ordering disclosure and giving some time to consider the disclosure, and I'm going to argue that there wasn't enough time. But that's really the question, is whether the district court abuses discretion in giving the remedy that it did. Correct, and the district court did not. The district court allowed for this pretrial hearing. They allowed for us to present our witness in the defense to cross-examine them. She, at the actual pretrial conference on September 22nd, when Mr. Moss at that hearing had raised additional questions that he had, she ordered me to respond to those, which I did in writing via email that day. Every time more was raised, I did everything I could to answer those questions. And the court gave a break and ordered me to turn it over, and as you can see in the transcript, I didn't have it written out. I didn't know those answers. I wasn't planning on asking. It was not until the juror questioned me. So as soon as I was ordered to do so, I... Counsel, I believe your testimony here today. However, your initial notice says dollar amounts of methamphetamine. The notice... Yeah, the original notice ends by saying that he's going to be an expert and he's going to testify on the dollar amounts of methamphetamine. And I acknowledge that that was over... Right. It was over-inclusive at that point in time. But as we prepared for trial, and what is in the transcript, and I recognize that I'm pointing to, that I had only elicited testimony from Detective Nightingale in that pre-trial hearing related to weights and his experience in these various units and how much time or how many cases were methamphetamine-related cases and what percentage were dealer cases versus possession cases, those sorts of topics. So the remedy, I agree, the court gave the proper remedy. And additionally, as Judge Strauss pointed out, there was all of this other proof. There was the weight, the testimony related to methamphetamine over 50 grams being distribution. The juxtaposition of the methamphetamine weight of over 50 grams versus the smaller amount of marijuana of only roughly 7 grams. The appellant's flight from law enforcement at high rates of speed in a vehicle, on foot, and then further resisting the officers. The fact that he had no paraphernalia. The fact that the medical records, the defendant's medical records, he made a statement where he admitted to using alcohol and tobacco but denied using drugs. The 404B evidence of the defendant's prior admissions that he was dealing 7 grams of meth a day in northeast Kansas City. One week of that is roughly 50 grams. It's 49 grams of methamphetamine. So that is all of this additional evidence that we have. The defendant's previous statement when he possessed 1.75 grams of meth that he intended to distribute part of that methamphetamine as well. Also, we had the defendant's own witness, Mallory Dummett, who on cross-examination, I asked her if related to their obtaining methamphetamine. And she admitted that she and the defendant on various occasions would go out, obtain methamphetamine, and share it with each other. That's distribution that she admitted her and the defendant were doing together. So we have all that other evidence separate from the street value of methamphetamine. So I agree that the remedy was appropriate and that the appellant could have asked for and chose not to ask for a continuance. He chose not to ask for a continuance the Friday before trial. They chose not to ask for a continuance that Monday morning when we had this pre-trial hearing that Detective Nightingale testified at. He also chose not to seek a continuance when the dollar figures were disclosed during the lunch hour. Even if it was just asking for a day or half a day to go out and seek an expert or speak with someone, there was no attempt made whatsoever. So Rule 16 D2 gives the court a few remedies. One, ordering that the party to permit the discovery or inspection, specify its time, place, and manner, prescribe other just terms and conditions. B, grant a continuance. C, prohibit that party from introducing the undisclosed evidence. D, enter any other order that is just under the circumstances. And the district court did a combination of these. We complied with those at each step of that event. The court pointed to the main cases that the government is concerned with. The Conroy case that the district court does not abuse their discretion by admitting expert witnesses' testimony when the government's notice of intent, the basis for the testimony, are not explained in detail. At what point is there the line where we have to turn over, essentially, our direct examination? And that's part of what the exchange was, admittedly on my behalf, not always artfully so during the trial. But what I was trying to say is, I don't have to give you my direct examination. I've put you on notice for all this. I've answered all of the questions. I've given you the CV. We've gone through his direct testimony before you, before trial started. That line seems to be far past that. I gave the three grand jury transfers. I gave him all of these grounds for Detective Nightingale's expert opinion. Factually speaking, opposing counsel says, I understand I didn't make this, that trial hearing. But were there other times that the defense counsel sought out the information and specifically asked you, what is the detective going to say about the street amount of the drugs? No, he didn't. And in fact, in that colloquy right before lunch, Mr. Moss said, I specifically asked for this. And I responded right toward the end of it and just made sure to state, no, I was never requested. This information was never requested. If it had been, I would have given it over. But no request was made. Any time a request was made, I responded. I sent it in email. I sent it in writing. None was made until right before lunch. We were in trial that day. If there are no other questions. How many days did the trial last? The testimony you're talking about was on the first day. So how long did it last? I believe it was two and a half, if my memory serves me right. The pre-trial hearing was before jury selection the first day. Detective Nightingale did not testify in the case in chief until the second, after lunch on the second. OK, so I think the briefs are mildly confusing. No, I'm not criticizing. I'm just saying because I think what you're calling the first day of trial, immediately prior to Detective Nightingale's expert, you're calling the second day, counting the jury selection and the hearing. Correct? The first day was September 25th. And that was when we had that pre-trial hearing. But I'm not calling a Daubert hearing because I don't believe it was a Daubert hearing. That was the first day. The second day was September 26th. And that was right before lunch, where the objection was raised after Detective Nightingale testified. Thank you. Thank you, Ms. Morgan. Mr. Goldberg? I think counsel states that this issue first came up at trial. I think if you look at district court document 50, and that's page 6, that's a response to the rule 702 notice. We specifically address their notice. And their notice stated that it was going to be including amounts typically sold and the dollar values. Counsel, given all the additional evidence that counsel recited, what's the prejudice here if there is error? I think the prejudice is twofold.  That's our defense. We're stuck with that defense. And the second, I think, prejudice is that we can't cross-examine them on the fly on these issues. So I think that's difficult. And I think that's troubling. And I think it's particularly troubling because the detective knew what he was going to say about the value of the methodology for that day of trial. Why not? Is that not a risk of the chosen trial strategy as opposed to a matter of legal error requiring a retrial? Right. Meaning that it was the defense counsel's trial strategy? Exactly. I don't think that's . . . I mean, when you look at this document, district court document 50, you see we're trying to get the information. And I understand the day beforehand at the Daubert hearing, he could have asked about that information. But again, I guess I go back to the notion that it shouldn't be us to have to extract information from the government through repeated requests and repeated requests. And only after the last minute, the court orders them to do so. They provide that information. I don't think that's what the rule requires. The document you were reading, was that a request from defense counsel to the prosecution to get the evidence? Or what exactly were you reading? That's the defendant's response to the 702 notice. Okay. Requesting the remedy that I think it says to exclude his testimony because it's insufficient. But you don't say dollar amounts in 50, do you? Is document 50 your document? Did you initiate 50? Yes, in there it does talk about the dollar values of methamphetamine. And that's part of their notice. We didn't say, please tell us right now what the dollar amounts is. But I think the issue is flagged as a whole. It's insufficient. I think the closest case, though, and I know I'm out of time, is the Shepard case from the Eighth Circuit where you have the government having previously provided similar testimony to the expert. I don't think that was the case. So for all those reasons, we respectfully submit this matter should be reversed and revised. Thank you, Mr. Colburn. Thank you, Your Honor. Thank you also, Ms. Morgan. We will take your case under advisement. To render decision in due course.